**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | |
|---|---|
| Vance Gillette, ) | |
| ) | |
| Plaintiff, ) | **ORDER GRANTING DEFENDANT'S** |
| ) | **MOTIONS TO DISMISS AND** |
| ) | **DENYING PLAINTIFF'S MOTION** |
| vs. ) | **FOR DECLARATORY JUDGMENT** |
| ) | **AND INJUNCTIVE RELIEF** |
| ) | |
| North Dakota Disciplinary Board Counsel, ) | |
| Brent Edison, ) | |
| ) | Case No. 4:08-cv-102 |
| Defendant. ) | |

_____

This is an action filed against the Assistant Disciplinary Counsel for the Disciplinary Board of the North Dakota Supreme Court, Brent Edison, in his official capacity. See Docket No. 1. On December 12, 2008, the Plaintiff filed a "Motion for Declaratory and Injunctive Relief." See Docket No. 3. On December 22, 2008, the Defendant filed a brief in opposition to the motion. See Docket No. 7. On January 2, 2009, the Plaintiff filed a reply brief. See Docket No. 11.

The Defendant filed a motion to dismiss on December 17, 2008. See Docket No. 5. The Plaintiff filed a brief in opposition on December 30, 2008. See Docket No. 10. A second motion to dismiss for failure to state a claim was filed on January 6, 2009. See Docket No. 12. For the reasons set forth below, the Defendant's motions to dismiss are granted, and the Plaintiff's motion for declaratory judgment and injunctive relief is denied as moot.

**I.   BACKGROUND**

The plaintiff, Vance Gillette, was admitted to practice law in North Dakota on October 5, 1978. See Docket No. 6-3. Gillette is a member of the Three Affiliated Tribes and lives on the Fort Berthold Indian Reservation in New Town, North Dakota. In December 2006, Gillette entered into written

contingent fee agreements with clients Richard Hall, Jamie Hall, Delphine Baker, Ardell Jean Baker, and Patti Jo Thomas for the purpose of representing these individuals in a wrongful discharge lawsuit against the Three Affiliated Tribes and its representatives. The fee agreements provided that Gillette would receive a contingent fee in the amount of 10% of all amounts awarded by judgment or negotiation. The contingent fee agreements contained the following provision:

> The attorney may pay any bills, including attorney fees associated with the case, whether incurred by the client or attorney directly from the proceeds received or monies deposited. The attorney is authorized to sign the clients (sic) name to any check, draft or release.

See Docket No. 6-3.

By letter dated July 6, 2007, Gillette attempted to unilaterally increase the contingent fee to 30%. The clients never agreed to, nor signed, any amendment to the 10% contingent fee arrangement. In October 2007, the Three Affiliated Tribes settled the case with Gillette's clients for a sum of $35,000 per claim. After his clients had been paid, Gillette filed a lawsuit in Fort Berthold Tribal Court to enforce and collect a 30% contingency fee rather than the agreed-upon 10% fee. On April 25, 2008, the Tribal Court entered judgment in favor of Gillette for the recovery of a 10% contingency fee on the total settlement amounts paid. See Docket No. 3-3.

A grievance against Gillette was filed with the North Dakota Disciplinary Board. The grievance was assigned to Brent Edison, Assistant Disciplinary Counsel for the North Dakota Disciplinary Board. On July 28, 2008, Edison filed a petition for discipline against Gillette for violating Rules 1.2(a), 1.4(a)(1), 1.5(a), 1.5(b), 1.7(b), 3.1, 3.3, 4.1, and 8.4(c) of the North Dakota Rules of Professional Conduct. See Docket No. 6-3.

Gillette then filed an action in federal district court seeking a declaration that North Dakota disciplinary law does not apply on the Fort Berthold Indian Reservation, and that only the Tribal Bar

2

Board has the authority to regulate attorney conduct on the reservation. Gillette also seeks a preliminary injunction to enjoin Edison from administering state disciplinary proceedings against him.

Edison moves to dismiss the complaint on principles of comity and for failure to state a claim.

## II.  LEGAL DISCUSSION

### A.  JURISDICTION OF THE NORTH DAKOTA DISCIPLINARY BOARD

Under Article VI, Section 3 of the North Dakota Constitution, the North Dakota Supreme Court is empowered "to promulgate rules and regulations for the admission to practice, conduct, disciplining, and disbarment of attorneys at law." Section 27-11-02 of the North Dakota Century Code authorizes the North Dakota Supreme Court to admit persons to practice as attorneys in the state. Section 27-14-01 of the North Dakota Century Code enables the North Dakota Supreme Court to revoke or suspend the admission of an attorney.

The North Dakota Supreme Court has stated, "Pursuant to our authority, we have adopted rules for admission to practice, rules of professional responsibility, and rules of disciplinary procedure. Those rules make the Disciplinary Board an arm of this court." Lashkowitz v. Disciplinary Bd. of the Supreme Court of the State of North Dakota, 410 N.W.2d 502, 504 (N.D. 1987). The purpose of disciplinary proceedings is for the North Dakota Supreme Court to determine, in the public interest, whether an attorney should continue to practice law.

The North Dakota Supreme Court has directly answered the question of whether it has jurisdiction to discipline an attorney for professional misconduct not occurring in the State of North Dakota. The Supreme Court has determined that it has jurisdiction and authority to discipline an attorney once admitted to practice law in North Dakota, regardless of licensure. See In re Disciplinary

Action Against Hawkins, 623 N.W.2d 431 (N.D. 2001); In re Disciplinary Action Against Robb, 615 N.W.2d 125 (N.D. 2000).

In In re Disciplinary Action Against Hawkins, Allan Hawkins had once been licensed to practice law in the State of North Dakota but was not licensed at the time that North Dakota disciplinary proceedings were commenced against him. The disciplinary proceedings arose out of conduct that occurred in Texas. Hawkins was licensed to practice in the State of Texas and admitted to the Texas bar, specializing in estate planning and taxation. Hawkins was appointed by a Texas court to serve as defense counsel in a criminal proceeding. He argued that he was not competent to practice criminal law and that he could not represent the defendant without violating the Texas Disciplinary Rules of Professional Conduct. Nonetheless, Hawkins filed motions on behalf of the defendant for a speedy trial, a jury trial, production of evidence, appointment of experts, and a motion to suppress evidence. Hawkins also offered advice to the defendant as to whether he should accept a plea agreement. The Texas court found that Hawkins was competent to represent the defendant, and ordered Hawkins to continue as appointed counsel. In response, Hawkins sent the defendant a letter stating,

> [Judge] has decided that you are not entitled to a lawyer.
>
> Apparently you are only entitled to a lawyer if a cash pay-off is made. I will not make a cash pay-off to obtain judicial favoritism. I believe it is a crime. Apparently that means that you don't get a lawyer.

In re Disciplinary Action Against Hawkins, 623 N.W.2d at 434.

Hawkins refused to represent the defendant and failed to notify him of the trial date. The Texas Commission for Lawyer Discipline initiated disciplinary proceedings against Hawkins and suspended his Texas license for four years. The matter was then presented to the North Dakota Disciplinary Board as a result of a petition for reciprocal discipline. The action was appealed to the North Dakota Supreme Court.

On appeal, Hawkins argued that the North Dakota Supreme Court lacked jurisdiction and authority to discipline him because he was not licensed in the State of North Dakota at the time of the professional misconduct, and that his conduct was unrelated to North Dakota. The North Dakota Supreme Court found that it had jurisdiction to review the hearing panel's order against Hawkins:

> Under the North Dakota Rules of Lawyer Discipline, this Court has power to prescribe appropriate standards of professional conduct and to establish procedures for lawyer discipline. N.D.R. Lawyer Discipl. 1.1A. Any attorney admitted to practice law in North Dakota is subject to this Court's disciplinary jurisdiction under these rules. N.D.R. Lawyer Discipl. 1.1C.
>
> Thus, regardless of whether Hawkins is currently licensed to practice law in North Dakota, he is subject to our disciplinary jurisdiction because he was admitted to practice law in North Dakota. See, e.g., In re Disciplinary Action Against Robb, 2000 ND 146, ¶¶ 5, 18, 615 N.W.2d 125 (disciplining an attorney who was not currently licensed to practice law in North Dakota, but was admitted to practice in North Dakota, by commencing his license suspension if and when the disciplined attorney reapplied for a license).

Id. at 435.

Gillette contends that the North Dakota Disciplinary Board lacks jurisdiction to discipline him because the Fort Berthold Indian Tribe has not consented to North Dakota jurisdiction under 25 U.S.C. § 1322. Section 1322(a) provides in relevant part:

> The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption . . . .

25 U.S.C. § 1322.

Gillette contends that 28 U.S.C. § 1322 applies to state bar disciplinary proceedings involving North Dakota licensed attorneys and attorney conduct occurring on an Indian reservation. In support of this contention, Gillette cites to New Mexico v. Mescalero Apache Tribe, 462 U.S. 324 (1983) (preempting state laws regulating hunting and fishing on reservation land); California v. Cabazon Band

5

of Mission Indians, 480 U.S. 202 (1987) (preempting state regulation of tribal gambling enterprises); Duncan Energy v. Three Affiliated Tribes, 27 F.3d 1294 (8th Cir. 1994) (involving tribal taxation of businesses on land located on the reservation but owned by non-Indians); and Malaterre v. Malaterre, 293 N.W.2d 139 (N.D. 1980) (considering whether a state trial court has continuing jurisdiction over divorce and custody matters when the mother and child moved onto an Indian reservation).  None of the cases involve disciplining an attorney for professional misconduct on an Indian reservation.

      The Eighth Circuit of Appeals has described the purpose of 25 U.S.C. § 1322(a) as follows:

> § 1322(a) was certainly not intended to deprive Indians of state-created substantive rights.  On the contrary, a number of the enacted tribal codes of justice provide that the tribal court with jurisdiction of a dispute will simply apply the law of the forum in which the court sits.  In effect, by the enactment of § 1322(a), Congress recognized that in keeping with the semi-autonomous status of the Indian tribe relative to its relationship with state government, the tribe has an interest in preventing the state from interfering with reservation affairs by unilaterally applying state law to all tribal members without tribal consent.  Such action would naturally infringe upon the right of the tribe to govern itself free from state interference respecting those matters arising within the boundaries of the reservation.

Poitra v. Demarrias, 502 F.2d 23, 27-28 (8th Cir. 1974).  Gillette has made no showing, nor does the Court find, that state bar disciplinary proceedings against an attorney, for conduct which occurred on an Indian reservation, interferes with reservation affairs.  State bar disciplinary proceedings apply to the named attorney in the complaint or petition, and do not apply to all tribal members.  Accordingly, 28 U.S.C. § 1322 is inapplicable to the present action.

      The Court expressly finds that the North Dakota Supreme Court has jurisdiction to discipline Gillette for professional misconduct regardless of where the misconduct occurred.  Gillette has been admitted to practice law in North Dakota since 1978.  The North Dakota Disciplinary Board, an arm of the North Dakota Supreme Court, may investigate complaints against attorneys, hold hearings, and make disciplinary recommendations to the North Dakota Supreme Court.  Therefore, the North Dakota

Disciplinary Board was within its power to investigate the grievance against Gillette. At issue is whether this Court should enjoin the state bar disciplinary proceedings against Gillette.

### B.   DOCTRINE OF ABSTENTION

The doctrine of abstention announced in Younger v. Harris, 401 U.S. 37 (1971), reflects a longstanding public policy against federal court interference with state court proceedings. "Younger directs federal courts to abstain from hearing cases when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." Fuller v. Ulland, 76 F.3d 957, 959 (8th Cir. 1996). The Younger abstention doctrine constrains a federal court's jurisdiction by the traditional principles of equity, comity, and federalism. Alleghany Corp. v. McCartney, 896 F.2d 1138, 1142 (8th Cir. 1990).

> In Younger, the Supreme Court explained its long-standing policy of abstention as follows:
>
> What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, 'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

Younger, 401 U.S. at 44-45.

The Supreme Court in Younger held that, except in extraordinary circumstances, federal courts should abstain from enjoining pending state criminal prosecutions. The Supreme Court has extended the Younger abstention doctrine to certain civil proceedings, "if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (1987). Exceptions

to the Younger doctrine apply when there is a showing of bad faith, harassment, or other exceptional circumstances. Younger, 401 U.S. at 53; Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 429 (1982).

In Middlesex County Ethics Comm., the United States Supreme Court considered whether the Younger abstention doctrine applied to a pending New Jersey disciplinary proceeding. An attorney licensed in the State of New Jersey represented a client in criminal proceedings. He spoke at a press conference at the outset of the criminal trial and made statements about the trial judge's judicial temperament and racial insensitivity, made statements critical of the trial, and called the trial "a travesty," "a legalized lynching," and "a kangaroo court." Middlesex County Ethics Comm., 457 U.S. at 428. A member of the Middlesex County Ethics Committee read the news accounts of the attorney's comments and filed a grievance with the ethics committee. Following the conclusion of the trial, the ethics committee investigated the grievance and determined that there was probable cause to believe that the attorney had violated the state's rules of professional responsibility. The ethics committee then served a formal statement of charges on the attorney. Rather than filing an answer to the charges, the attorney filed a lawsuit in federal district court, contending that the disciplinary rules violated the First Amendment to the United States Constitution and that the rules were overly broad and vague. The federal district court dismissed the action based on Younger.

The Third Circuit Court of Appeals reversed and held that the state bar disciplinary proceedings did not provide a meaningful opportunity to adjudicate constitutional claims because the ethics committee consisted of both lawyers and non-lawyers and no formal opinion was filed by the committee. Garden State Bar Ass'n v. Middlesex County Ethics Comm., 643 F.2d 119, 126 (3d Cir. 1981). The Third Circuit determined that the state bar disciplinary proceedings were designed to elicit facts, not legal arguments. Id. On petition for rehearing, the Third Circuit noted that at the time of the

8

disciplinary proceedings there was no state rule to ensure that the attorney's constitutional claims would be reviewed by the state supreme court. Garden State Bar Ass'n v. Middlesex County Ethics Comm., 651 F.2d 154, 156 (3d Cir. 1981). Subsequent to the Third Circuit's original order, the New Jersey Supreme Court adopted a rule allowing for interlocutory review of constitutional challenges to the proceedings. See id.

On appeal, the United States Supreme Court set forth a three-part test for determining whether a federal court should abstain from enjoining pending state bar disciplinary proceedings: (1) do state bar disciplinary proceedings within the constitutionally prescribed jurisdiction of the state supreme court constitute an ongoing state judicial proceeding; (2) do the proceedings implicate important state interests; and (3) is there an adequate opportunity in the state proceedings to adjudicate constitutional challenges. Middlesex County Ethics Comm., 457 U.S. at 432.

First, the United States Supreme Court determined that New Jersey's disciplinary proceedings constituted ongoing state judicial proceedings. "The State of New Jersey, in common with most States, recognizes the important state obligation to regulate persons who are authorized to practice law. New Jersey expresses this in a state constitutional provision vesting in the New Jersey Supreme Court the authority to fix standards, regulate admission to the bar, and enforce professional discipline among members of the bar." Middlesex 457 U.S. at 432-33. The Supreme Court noted that the state supreme court recognized the ethics committee as an arm of the court in receiving and investigating complaints and holding hearings. "From the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee." Id. at 433 (quoting Toft v. Ketchum, 113 A.2d 671, 674 (N.J. 1955)).

Second, the United States Supreme Court found that the State of New Jersey has an important interest in exercising control of the professional conduct of its attorneys. "The State of New Jersey has

9

an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses. States traditionally have exercised extensive control over the professional conduct of attorneys." Id. at 434. Further, the Supreme Court noted, "[t]he judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." Id.

Third, the United States Supreme Court determined that New Jersey's disciplinary proceedings provided an adequate opportunity to raise constitutional challenges. Quoting Younger, the Supreme Court stated, "Abstention is based upon the theory that '[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'" Middlesex, 457 U.S. at 435.

The United States Supreme Court found that the attorney failed to respond to the complaint filed by the ethics committee and, more importantly, failed to attempt to raise constitutional challenges in the state disciplinary proceedings. The Supreme Court said, "Under New Jersey's procedure, its Ethics Committees constantly are called upon to interpret the state disciplinary rules. Respondent Hinds points to nothing existing at the time the complaint was brought by the local Committee to indicate that the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees." Id. As a result, the Supreme Court found the state bar disciplinary proceedings sufficient to raise constitutional challenges in light of the relationship between the state supreme court and the committee. Further, the Supreme Court noted that any doubt was alleviated by the state supreme court's adoption of a rule allowing for interlocutory challenges to the constitutionality of the state disciplinary proceedings. Id. at 436.

The Eighth Circuit Court of Appeals has applied <u>Younger</u> and <u>Middlesex County Ethics Comm.</u> to attorney disciplinary proceedings. <u>See</u> <u>Norwood v. Dickey</u>, 409 F.3d 901 (8th Cir. 2005) (upholding a federal district court's decision to dismiss an action against a judge for alleged violations of judicial canons based on <u>Younger</u> because (1) the proceedings were ongoing, (2) the proceedings implicated an important state issue–the quality of the judiciary, and (3) Norwood had an adequate opportunity to raise his federal constitutional issues; <u>Neal v. Wilson</u>, 112 F.3d 351 (8th Cir. 1997) (finding under <u>Younger</u> that the federal district court lacked subject matter jurisdiction to hear Wilson's constitutional challenges to the state bar disciplinary proceedings).

### 1) **ONGOING STATE JUDICIAL PROCEEDING**

The North Dakota Disciplinary Board contends that the North Dakota Rules for Lawyer Discipline establish a state judicial process for disciplining attorneys, and that there is an ongoing state judicial proceeding against Gillette.

Article VI, Section III of the North Dakota Constitution authorizes the North Dakota Supreme Court to effectuate rules and regulations for disciplining attorneys admitted to practice law in this state. Pursuant to this authority, the North Dakota Supreme Court has issued the North Dakota Rules for Lawyer Discipline.

Rule 1.1(C) of the North Rules for Lawyer Discipline describes the attorneys who fall within the jurisdiction of the Rules:

> Any lawyer admitted to practice law in this state (including any formerly admitted lawyer with respect to acts committed prior to suspension, disbarment or transfer to any disability status or inactive status, or with respect to acts subsequent thereto which amount to the practice of law or which constitute misconduct subject to sanctions), and any lawyer specially admitted by a court of this state for a particular proceeding, and any lawyer not admitted in this state who practices law or renders legal services in this state is subject to the disability and disciplinary jurisdiction of the court under these rules.

"[D]isciplinary proceedings are neither civil nor criminal, but quasi-judicial in nature." In re Disciplinary Action Against McDonald, 609 N.W.2d 418, 423 (N.D. 2000).

Complaints alleging professional misconduct are filed with the Secretary of the Disciplinary Board and then assigned to the appropriate subcommittee. N.D.R. Lawyer Discipl. 3.1(A). The complaints are then evaluated by the chair or vice-chair of the District Inquiry Committee. N.D.R. Lawyer Discipl. 3.1(B). If the lawyer is not subject to the jurisdiction of the North Dakota Supreme Court, the chair or vice-chair shall refer the matter to the appropriate entity in the jurisdiction in which the lawyer is admitted. N.D.R. Lawyer Discipl. 3.1(B). If the alleged facts of the complaint are untrue, or if the conduct alleged in the complaint does not rise to the level of disciplinary action or disability, then the complaint must be summarily dismissed. N.D.R. Lawyer Discipl. 3.1(C). Complaints which are not dismissed are promptly investigated by a member of a District Inquiry Committee or counsel. N.D.R. Lawyer Discipl. 3.1(D)(1). The lawyer must then be served a copy of the complaint. N.D.R. Lawyer Discipl. 3.1(D)(2). The lawyer must serve its response to the complaint within twenty days. N.D.R. Lawyer Discipl. 3.1(D)(2). "Failure to make a timely response is an admission that the factual allegations of the complaint are true for purposes of proceedings before the district inquiry committee." N.D.R. Lawyer Discipl. 3.1(D)(3).

Within sixty days of assignment, the investigator shall file a written report with the chair summarizing the investigation and conclusions, the response received from the lawyer, and any relevant documents. N.D.R. Lawyer Discipl. 3.1(D)(5). The complainant and lawyer must then be provided notice of the opportunity to appear before the District Inquiry Committee prior to entry of discipline. N.D.R. Lawyer Discipl. 3.1(D)(6)-(7). The District Inquiry Committee then notifies the complainant and lawyer of its decision. N.D.R. Lawyer Discipl. 3.1(D)(8). The complainant and lawyer may appeal any disposition, "except a determination that there is probable cause or a diversion from discipline."

N.D.R. Lawyer Discipl. 3.1(D)(8). If the District Inquiry Committee's decision is appealed, the North Dakota Disciplinary Board considers the merits of the appeal. N.D.R. Lawyer Discipl. 3.1(D)(8). The lawyer or the complainant may then file a petition for leave to appeal to the North Dakota Supreme Court. N.D.R. Lawyer Discipl. 3.1(D)(8). However, leave will not be granted unless it is shown that the North Dakota Disciplinary Board acted arbitrarily, capriciously, or unreasonably. N.D.R. Lawyer Discipl. 3.1(D)(8).

The North Dakota Disciplinary Board begins a formal disciplinary proceeding within sixty days of the referral or within sixty days of believing that there is probable cause to believe the lawyer committed misconduct warranting public discipline. N.D.R. Lawyer Discipl. 3.1(E). Counsel for the North Dakota Disciplinary Board initiates the proceedings by filing with the Disciplinary Board, and serving upon the lawyer, a petition informing the lawyer of the alleged misconduct. N.D.R. Lawyer Discipl. 3.1(E)(1). Upon receiving the petition, the chair of the North Dakota Disciplinary Board assigns the matter to a hearing panel. N.D.R. Lawyer Discipl. 3.1(E)(1). Within twenty days of receiving the petition, the lawyer shall serve an answer. N.D.R. Lawyer Discipl. 3.1(E)(2). The lawyer may then request the opportunity to be heard in mitigation, or if there are any material issues of fact raised by the pleadings, the hearing panel shall provide the parties twenty-five days notice of the hearing. N.D.R. Lawyer Discipl. 3.1(E)(3). Notice must indicate that the lawyer is entitled to be represented by counsel, to cross-examine witnesses, and to present evidence. N.D.R. Lawyer Discipl. 3.1(E)(3).

Within sixty days of the close of the hearing record, the hearing panel shall file its order of dismissal, probation, or reprimand. N.D.R. Lawyer Discipl. 3.1(F)(1). The parties may then petition the North Dakota Supreme Court to review the hearing panel's order. N.D.R. Lawyer Discipl. 3.1(F)(1). The hearing panel is required to submit to the North Dakota Supreme Court its findings and

recommendations. N.D.R. Lawyer Discipl. 3.1(F)(2). The lawyer may file objections to the report and may file briefs on those objections. N.D.R. Lawyer Discipl. 3.1(F)(2). The parties may request oral argument on their briefs. N.D.R. Lawyer Discipl. 3.1(F)(2).

In this case, a complaint was filed against Gillette which initiated the state disciplinary proceedings. On July 28, 2008, Brent Edison, Assistant Counsel for the North Dakota Disciplinary Board, filed a Petition for Discipline with the Disciplinary Board. See Docket No. 6-3. The North Dakota Disciplinary Board is an arm of the North Dakota Supreme Court to receive and investigate complaints, hold hearings, and make recommendations to the court. Because the North Dakota Disciplinary Board is created and appointed by the North Dakota Supreme Court, operates pursuant to the rules promulgated by that court, and is subject to review by that court, the Disciplinary Board's decision to discipline Gillette is a functional equivalent of a state court judgment. See Mosby v. Ligon, 418 F.3d 927, 931-32 (8th Cir. 2005). As a result, the Court finds that the disciplinary proceedings initiated against Gillette are ongoing state judicial proceedings as contemplated by Younger.

### 2) IMPORTANT STATE INTERESTS

Rule 1.1 of the North Dakota Rules of Professional Conduct provides, "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." "[T]he rules of professional conduct set a minimum level of conduct with the consequence of disciplinary action." In re Disciplinary Action Against Hoffman, 703 N.W.2d 345, 348 (N.D. 2005) (quoting In re Disciplinary Action Against McKechnie, 656 N.W.2d 661, 666 (N.D. 2003)).

The Court finds that the State of North Dakota has an important interest in maintaining the professional conduct of the attorneys it licenses. "The purpose of lawyer discipline proceedings is to

protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." Matter of Disciplinary Action Against Britton, 484 N.W.2d 110, 113 (N.D. 1992) (quoting North Dakota Standards Imposing Lawyer Sanctions 1.1).  Public confidence in the legal system may be eroded by irresponsible or improper conduct of an attorney.  Therefore, the state has a significant interest in maintaining the highest possible ethical standards of conduct of attorneys licensed to practice.

### 3) ADEQUATE OPPORTUNITY TO RAISE CONSTITUTIONAL CHALLENGES

The North Dakota Disciplinary Board argues that the state's disciplinary proceedings provide Gillette with an adequate opportunity to raise constitutional challenges.  The North Dakota Rules for Lawyer Discipline provide an intricate framework for disciplining an attorney who is currently, or was once, licensed in this state.  Once a complaint is filed with the Secretary of the North Dakota Disciplinary Board, the lawyer is served a copy of the complaint and shall serve an answer within twenty days.  N.D.R. Lawyer Discipl. 3.1(D)(3).  An investigator considers the merits of the complaint and files a written report with the chair of the District Inquiry Committee.  N.D.R. Lawyer Discipl. 3.1(D)(5).  The lawyer is then provided notice of opportunity to appear before the District Inquiry Committee before entry of discipline.  N.D.R. Lawyer Discipl. 3.1(D)(7).  Then, the lawyer is notified of the disposition of the complaint, and may appeal any disposition, except a determination that there is probable cause or a diversion of discipline.  N.D.R. Lawyer Discipl. 3.1(D)(8).  The North Dakota Disciplinary Board considers the merits of the appeal and issues a determination, which may be appealed to the North Dakota Supreme Court on a showing that the Disciplinary Board acted arbitrarily, capriciously, or unreasonably.  N.D.R. Lawyer Discipl. 3.1(D)(8).  Counsel for the North Dakota

Disciplinary Board then files a petition with the Disciplinary Board to initiate formal disciplinary proceedings. N.D.R. Lawyer Discipl. 3.1(E)(1). The lawyer shall serve its answer to the petition within twenty days. N.D.R. Lawyer Discipl. 3.1(E)(2). Disciplinary counsel then submits its proposed findings, conclusions, and recommendation to the hearing panel. N.D.R. Lawyer Discipl. 3.1(E)(4). The hearing panel serves its order of dismissal, probation, or reprimand. N.D.R. Lawyer Discipl. 3.1(F)(1). The parties may then seek judicial review of the hearing panel's order. N.D.R. Lawyer Discipl. 3.1(F)(1). On review, the parties are entitled to file their objections to the hearing panel's report, file briefs corresponding to those objections, and request oral arguments. N.D.R. Lawyer Discipl. 3.1(F).

The Court finds that the North Dakota Rules for Lawyer Discipline provide more than an adequate opportunity to raise constitutional issues. Under North Dakota's disciplinary structure, an attorney may file objections, or appear in person to express objections, to the District Inquiry Committee, the North Dakota Disciplinary Board, the hearing panel, and the North Dakota Supreme Court. The North Dakota Rules for Lawyer Discipline provide a full opportunity for the lawyer to petition the North Dakota Supreme Court to review the hearing panel's order of dismissal, probation, or reprimand. The lawyer may submit his objections to the order in the form of briefs and may request oral argument. As an objection to the order, the lawyer may raise any constitutional challenges to the North Dakota Rules for Lawyer Discipline or its application. As a result, the Court finds that the state bar disciplinary proceedings provide Gillette abundant opportunities to raise his constitutional challenges.

In this case, Gillette failed to serve an answer to the original disciplinary complaint, and failed to even <u>attempt</u> to raise any federal constitutional challenges in the state bar disciplinary proceedings. Gillette's challenge to the North Dakota Supreme Court's jurisdiction, and his assertion that state

disciplinary action violates his rights to equal protection, can be raised, and should be raised, in the state disciplinary proceedings.

### III.    CONCLUSION

The Court finds that the <u>Younger</u> abstention doctrine clearly applies in this case. The Court finds that there is an ongoing state judicial proceeding to discipline Vance Gillette, that the State of North Dakota has an important interest in maintaining professional conduct by the attorneys it licenses, and that the state disciplinary proceedings provide Gillette with an adequate opportunity to raise his constitutional concerns. Accordingly, the Court will abstain from interfering with the pending state bar disciplinary proceedings against Gillette.

For the foregoing reasons, the Defendant's motions to dismiss (Docket Nos. 5, 12) are **GRANTED**. The Plaintiff's motion for declaratory judgment and injunctive relief (Docket No. 3) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 14th day of January, 2009.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court